## 35240. SANDIFER v. LYNCH et al.

MARSHALL, Justice.

This is a custody dispute between the mother of two minor children and the paternal grandparents. In January of 1978, the grandparents obtained custody of the children from the mother by order of a South Carolina court. Shortly thereafter, the grandparents moved to Bryan County, Georgia. The petition in this case was filed by the mother in July of 1978 in the Bryan Superior Court, seeking a change of custody based on a material change of conditions adversely affecting the children.

The plaintiff mother, Peggy Lee Sandifer, married appellee Beulah Lynch's son, Larry Sandifer, in 1972. They had two children: Larry, born in 1973, and Michael, born in 1975. In January of 1977, Peggy's husband, Larry, was sent to jail for writing bad checks. Peggy returned to her parents' home in Atlanta, Georgia. In July of 1977, she turned her two children over to Larry's parents, the Lynches, because she was unable to care for them. Peggy moved to South Carolina and obtained employment there, but the Lynches retained custody of the children, with Peggy being allowed to visit them.

The Lynches maintain, and the trial court found, that at the time the Lynches received custody of the children, the children were undernourished and suffering from malnutrition. In October of 1977, the Lynches petitioned the family court in Berkeley County, South Carolina, for custody of the children. A hearing was scheduled for November of 1977, and Peggy Sandifer appeared at the hearing without an attorney. The hearing was continued until December of 1977 so that she could obtain counsel. Prior to the latter hearing, Peggy executed an affidavit stating that at the time she turned the children over to the Lynches they were in a dehydrated physical condition and had suffered physically and emotionally. She also stated in the affidavit that she was incapable of taking care of the children "at this time," and that she wished to relinquish "full and complete custody" of the children to the Lynches until she was in a position to properly take care of them. (At the hearing below, Peggy testified that she was

unaware of the contents of the affidavit and had signed it merely to permit the Lynches to obtain custody of the children.) At the hearing in South Carolina in December of 1977, Peggy did not appear, either in person or through an attorney. The Lynches appeared before the court with the children, and they introduced evidence, including Peggy's affidavit. The court awarded the Lynches custody of the children, with Peggy being given reasonable visitation privileges. The South Carolina court order further provided that any of the parties could appear before the court when circumstances changed to ask for modification of the order.

At the time custody of the children was awarded to the Lynches, Peggy had returned from South Carolina to her parents' home in Atlanta, Georgia. In this proceeding, the trial judge found that the plaintiff's evidence failed to show a change of conditions since that date. The trial court found that she was still living in the same circumstances not unlike the circumstances existing during her marriage. In addition, the trial court noted that the defendants had offered evidence that the children were "healthy, well cared for, and satisfactorily adjusted to the circumstances with the defendants." Accordingly, the petition for change of custody was denied. The plaintiff appeals.

1. At trial, the appellees submitted a copy of the South Carolina custody order, which was certified by the clerk of the South Carolina court.[1] The appellant objected to its introduction on the ground that the signature of the clerk was stamped rather than handwritten. The trial judge ruled that he would allow the copy of the South Carolina order to be admitted, but the appellees were ordered to submit another copy of the order with the seal of the South Carolina court attached.[2] The appellant raised no objection to this at trial.

In the first enumeration of error, the appellant

---

[1]This is a method for authenticating a foreign judgment under Code § 38-627 (b).

[2]This is an alternative method of authenticating a foreign judgment under Code § 38-627 (a).

argues that the copy of the South Carolina custody order which was first admitted in evidence at trial was not properly authenticated because the signature of the clerk was stamped rather than handwritten. The appellant also complains of the action of the trial judge in allowing the appellees to introduce another copy of the custody order, together with other pleadings in the case. The appellant argues that these documents were introduced after trial without giving her the opportunity to inspect them, cross examine concerning them, or offer evidence in rebuttal.

Subsections (a) and (b) of Code § 38-627 provide two alternative methods for authenticating the laws and judicial proceedings of other states, so as to entitle them to full faith and credit in this state.[3] Code § 38-627 (b) allows the judicial proceedings of courts of other states to be proved in the courts of this state "when certified under the hand and seal (if any) of the judge, clerk, or other official of such court, tribunal, or quasi-judicial agency . . ." The copy of the South Carolina custody order, which was admitted at the trial below, was properly authenticated under Code § 38-627 (b). There is no requirement that the signature of the clerk be handwritten rather than stamped.

The action of the trial judge in allowing another copy of the custody order, with other pleadings, to be made part of the record after the trial was, at most, harmless error. We find this enumeration of error to be without merit.

2. In the second enumeration of error, the appellant argues that the trial judge erred in ruling that the South Carolina order was an award of permanent rather than temporary custody.

The record in this case shows that the South Carolina law on this subject was not pleaded or proved. See Code Ann. § 81A-143 (c). Under these circumstances, the law of

---

[3]Under Section 74-516 of the Uniform Child Custody Jurisdiction Act (Code Ann. § 74-516; Ga. L. 1978, pp. 258, 269, eff. Jan. 1, 1979), foreign custody decrees are enforceable in this state merely by filing a certified copy with the clerk of the superior court. See *Roehl v. O'Keefe,* 243 Ga. 696 (256 SE2d 375) (1979).

this state is applied in interpreting and giving effect to the judgment of the court of a sister state. E.g., *Glover v. Sink,* 230 Ga. 81 (195 SE2d 443) (1973); *Crisp v. McGill,* 229 Ga. 389 (191 SE2d 836) (1972). Under Georgia law, the South Carolina custody order is a final adjudication as to the custody of the children based on the facts as they existed at the time the order was entered; the South Carolina trial court's attempt to retain jurisdiction over the question of custody is, under Georgia law, ineffectual to prevent the child custody award from becoming final. *Glover v. Sink,* supra.

Thus, we conclude that the trial court did not err in interpreting the South Carolina order as an award of permanent custody. However, even a permanent custody award rendered in a court of another state is modifiable in this state upon a showing of a substantial change of conditions materially affecting the welfare of the minor children. *Glover v. Sink,* supra. See generally 23 EGL 343, Parent and Child, § 38. Thus, this was the proper standard for the trial judge to use in determining whether to grant the petition for change of custody. In fact, as stated earlier in the opinion, the appellant's petition sought the change of custody on this very ground. We find this enumeration of error to be without merit.

3. In the third enumeration of error, the appellant argues that the trial judge erred in refusing to allow her to voluntarily dismiss her petition at the commencement of the trial. The appellant sought to dismiss her petition because she was unaware that records of the South Carolina custody proceeding would be introduced. The trial judge refused to dismiss the case, ruling that the request in the defendants' answer that they be allowed to retain custody of the children without interference was a prayer for affirmative relief, which prevented the plaintiff from being allowed to automatically dismiss. The trial judge also noted that all of the witnesses involved in the case were at the hearing and ready to testify.

Code Ann. § 81A-141 (a) basically provides that a plaintiff may voluntarily dismiss an action at any time before the verdict, unless the defendant has pleaded a counterclaim which cannot be adjudicated independently of the plaintiff's claim. This counterclaim limitation on

voluntary dismissals has been liberally construed so as to do substantial justice where the plaintiff seeks to voluntarily dismiss in the face of affirmative relief being sought by the defendant. See *Worthen v. Jones,* 240 Ga. 388 (240 SE2d 842) (1977) and cits. Adjudged by this standard, we find that the trial court did not err in refusing to allow the appellant to voluntarily dismiss.

4. In the final enumerations of error, the appellant argues that the trial judge's refusal to grant the petition for change of custody should be overturned on evidentiary grounds. We find that the trial judge's decision is supported by the evidence. Accordingly, we affirm. See, e.g., *Horne v. Horne,* 236 Ga. 270 (223 SE2d 666) (1976).

*Judgment affirmed. All the Justices concur, except that, as to Division 1, Hill, J., concurs in the judgment only.*

SUBMITTED AUGUST 10, 1979 — DECIDED SEPTEMBER 26, 1979.

*Ferguson & Todd, Monroe Ferguson,* for appellant.
*Allen, Brown, Wright & Edenfield, Charles H. Brown,* for appellees.